Judge Marshall
delivered the Opinion of the Court.
James Mitchum having died, in the year 1823, much indebted, andleaving several infant children, Polly Mitchum, his widow, Dudley Mitchum, his father, and Goodloe Carter, became his administrators; and, in December of that year, made sale of his personal estate and negroes.
At this sale, Carter, one of the administrators, and John Mitchum, purchased articles to the aggregate value of fifteen hundred and sixteen dollars, ninety six cents. Whether this was to be paid in specie, or Commonwealth’s Bank notes, is the principal question of fact in the case,, and the evidence in relation to it will be hereafter adverted to.
On the 17th of June, 1824, John Harvie, to whom the decedent was indebted in a sum exceeding ten thousand dollars, secured by three notes and by deed of trust on a valuable farm and tract of land, commenced a suit in chancery against the administrators and infant heirs, together with the trustees named in the deed, praying for a sale of the land in satisfaction of his debt. On the succeeding day, the process was executed, and on the same day, Dudley and John Mitchum purchased from Harvie, at a considerable discount, his demand against the estate of James Mitchum, and took a transfer to themselves of the debt, and of the benefit of the deed of trust, with the privilege of using Harvie’s name in prosecuting the suit which had been commenced. On the following day, the third from that on which the subpoena was issued, the Court being in session, Dudley Mitchum was appointed guardian ad litem, for the heirs of the decedent, all of whom were infants, and immediately answered for them, in the usual form.
*261 At the ensuing September term of the Court, the administrators filed their joint answer, admitting the aliegations of the bill, and assenting to the sale; but stating, that Dudley and John Mitchum (the latter of whom was no party to the suit) had purchased and paid off the debt due to Harvie, by paying twelve hundred dollars in June, 1824, and eight hundred dollars on the first day of September, and by executing their joint notes for twenty five hundred dollars each, payable on the first of June, in the years 1825, 1826, 1827, and a similar note pay-' able on the first of June, 1828. They suggest that the sale should be made on credits similar to these, and request that the instalments should be made payable so far in advance of the payments to be made to Harvie by the Mitchums, as to ensure their ability to meet their engagement.
The trustees filed a formal answer at the same time; and thereupon the Court decreed, that the defendants should, on or before the 15th day of the next month (October,) pay to the complainant the sum of ten thous- and eight hundred and thirty one dollars, (the amount, as we presume, of Harvie’s debt with interest;) and on failure thereof, directed the trustees, as commissioners, to make sale of the land; the purchaser to pay five thousand dollars in hand, and to execute bonds for the residue,payable, in equal instalments, on the first day of June, in the years 1826, 1827, and 1828; the money and bonds to be paid over to the complainant, or his assignees. On the 6th of January, 1825, the commissioners sold the land, subject to the widow’s dower;'and Dudley and John Mitchum became the purchasers, at the price of ten thousand six hundred and twenty one dollars, eighty seven and a half cents; for a part of which sum, they executed bonds as required by the decree, and took receipts for the whole price as purchasers, and gave receipts for the whole, as assignees of Harvie. At the March term, 1825, these proceedings were approved by the Court; a deed was made to the Mitchums in their own right; a credit directed to be entered on Harvie’s judgments, for the net proceeds of the sale, and leave given him to take out execution for the balance.
Debts of Carter §-c. (ante) reckoned asCom’th’s money, and applied as a payment,at half their amount, on the balance due to D. and J. M. as assignees of Harvie.
The bill in the present case, its allegations and objects.
The exact amount of this balance cannot be ascertained from any data furnished by the record. But the-settlement of the administrators, made with the County Court, in June, 1825, exhibits the following, item, as a credit in their favor, and a charge against the estate of James Mitchum, viz:
“ To receipt of Dudley Mitchum and John “ Mitchum, for $1516 96 cents, in Com’wths. “ bills, pd. by the administrators, in discharge “ of a balance of half that amount in specie, “ due the said Dudley and John ass’ee of John “ Harvie. This was paid by a discount of a “ debt due by said John Mitchum and Goodloe “Carter, contracted by purchases made by “ them at the sale of the estate of sd. dec’d. “$539 411 cents of the above was due from “ and paid by sd. Carter, all the balance from “John Mitchum.” ... $1516 96
In 1831, Dudley Mitchum having in the mean time departed this life, the heirs of James Mitchum filed the present bill against Polly Mitchum, Goodloe Carter, the .executors of Dudley Mitchum, and John Mitchum, and John Brand.
The complainants seem to have had in view, as one object of their bill, the redemption of the land, and, for this purpose, Brand, who purchased it from the Mitchums, was made a defendant. But there is no sufficient ground for a decree to this effect; and no question being made upon this subject in this Court, we shall notice it no farther than to say, that the bill was properly dismissed as to-Brand. The bill and other proceedings in the suit of Harvie (of which the substance has been stated) are made a part of this bill; and the complainants allege, that Dudley and John Mitchum have speculated largely and improperly, and greatly to their injury, by means of the Harvie debt; that they obtained an erroneous and illegal decree for the sale of the land; that they purchased it, under the decree, at a great sacrifice to the estate, and sold it at an advance before their payments to Harvie became due; that they realized a farther profit, in which Carter participated, in procuring the alleged balance of the *263 Harv'ie debt to be set-off against double the sum due to the 'estate by Carter and John Mitchum, which sum, they allege, was due in specie, and not in Commonwealth’s paper; and they charge, that the administrators acted illegally and fraudulently in making this set-off, and in procuring a credit on account of it in their settlement. They claim from Carter and John Mitchum, or from the administrators of their father,James Mitchum, the sum of fifteen hundred and sixteen dollars, ninety six cents, involved in this transaction; and from John Mitchum and the representatives of James Mitchum, they claim the difference between the sum which they gave for the Harvie debt, and the present value of the land sold to satisfy it. The bill prays, also, for general relief.
dei"’ts’ proof #o. Answers of the
The defendants, except Polly Mitchum, deny that there was any impropriety, fraud, or illegality, in any of these transactions; or that any speculation was made in the purchase and sale of the land by Dudley and John Mitchum; on the contrary, they say that they bid as much for it as it was worth, and more than any body -else would bid, and that they sold it for six hundred and twenty one dollars, eighty seven and a half cents less, to Brand; but the particulars of this sale are neither alleged nor proved. They deny, also, that Carter and John Mitchum were indebted to the estate in specie, or in any ■-other way except for purchases máde at the sale of the personal property, which sale they allege was for Commonwealth’s paper, of which two dollars were then worth but one in specie. Polly Mitchum says, she had little to do in the administration of her husband’s estate; that she did not participate in the business of collecting and paying debts; that the arrangement and settlement of the debt from Carter and John Mitchum, were made, and the credit therefor procured, without her knowledge or consent, and that she disapproves of them, as she understood the sale of the personalty to have been for dollars, and not for Commonwealth’s Bank notes. The settlement with the County Court above referred to, bears intrinsic evidence that Dudley Mitchum and Carter were the "acting administrators — at least, in making *264 that settlement, and the obnoxious arrangement which it sanctions. No proof was taken, except as to the terms 0f tke administrators’ sale, and the value of Commonweaiffi>s Ban]t notes. And on the hearing, the bill was dismissed.
The main ques-onntheateffeetHof the purchase of by M.— oneofthembeing anadmmistiator.
The leading question in the case, and that upon which a^ rest mainty depend, is, whether by the purchase of the Harvie debt, Dudley and John Mitchum became entitled to stand in Harvie’s place, and to demand from the estate of James Mitchum, the full payment of the en^re or whether they only acquired the right to demand remuneration for advances made, and indemnity for liabilities incurred by them, in making the purchase; leaving to those immediately interested in the estate, as creditors, heirs or distributees, the benefit of the discount obtained by the arrangement.
If they were entitled to nothing more than remuneration and indemnity, it is clear, that they had no right to sell any more of the land on which the debt was secured, than enough to answer these purposes; and that so much of the land as should be left, or, if the whole were sold, and the sale is permitted to stand, so much of the proceeds of the sale as might remain after accomplishing this object, would belong, not to them, but to the heirs. As the Mitchums, after their purchase of the Harvie debt, proceeded, with the suit brought by him for subjecting the land, apd dictated the terms of the sale, with the express view»- of.making the land meet their engagements with Harvie, and as they themselves became the purchasers, for their own benefit, at a price more than sufficient to repay what they had paid and assumed to pay for the whole debt — it would also follow, upon the hypothesis assumed, that they were no longer the creditors of the estate on account of this debt. But that, on the first day of June, 1828, when their final payment to Harvie and their final payment for the land became due, they were indebted to the heirs, at the least, in whatever sum the net proceeds of the sale may have exceeded the payments to Harvie. A further consequence would be, that as the estate of James Mitchum owed nothing on account of the Harvie debt, after the sale of the land— *265 there was no balance of that debt due to Dudley and John Mitehum, with which they could pay the debts that John Mitehum and Carter owed to the'estate; that the administrators who gave up these debts, for such an alleged balance, threw away so much of the estate in their hands, for nothing; and that either they, or the original debtors, or all concerned, are liable for the amount.
A trustee, ^’or, permitted to raise in himself an m-that of the party-*orrw^0™ra|^a the estate for his ¿¶? líe buys a debt against the forwhieh heaete, he can elairn no^remMeratioiT
Where an ex’or or adm’r and a sti.anger unite cl-make a joint purchase of a debt due from the detogether upon the ®™¿^rorad*mr would occupy, if ^aaeal°the pu¿ chase: they can accountable for th®. amount of tu6ir Durchas6 and no more.
Had one of the administrators been alone concerned in purchasing the Harvie debt, the arrangement effected by him, would, without question, have been considered as made for the benefit of the estate, and he would have been entitled to nothing more than remuneration and indemnity. A trustee or executor (and in this respect an administrator occupies precisely the same grounds) «is not permitted to raise in himself an interest opposite to that of the party for whom he acts; nor to traffic in the estate for his own emolument.” 5 Johns.Ch. Rep. 409. And it has been long held as an established rule, that whatever is gained by an executor in compounding the debts of the estate, is gained for the benefit of the estate. 1 Salk. 155. Anon.
The rule is not better established by authority, than it is salutary in its operation, and indeed, essential to the protection of those interests which are committed to executors and administrators. A Court of Equity, whose province it is to supervise the transact^SIss^fi^se fiduciaries, is bound to maintain, in portant restriction, and to represa) any evasion 'wMfch threatens to violate the principle owjtóiüto.
What effect then can be given, /consistently . , . - If . , ... -I rule, to the union of a stranger in buying up at a discount the dewfcs. of the estáte'h/lt J ° † . . . , „ Jr cannot discharge the administrator IromS^s^tTim, nor authorize him to seek or to derive personal profit to himself from the transaction. To admit such an exception, would be a palpable violation of the rule. Is the strangerthento take the whole benefit of the contract? or is he to take the benefit in proportion to his share of the contribution, leaving to the estate the profit arising from the administrator’s share of the purchase? He cannot be entitled to the whole profits of a joint transaction in a o which he incurs but a part of the risk and expense. If *266 it be supposed, that he ought to be allowed a proportionate share, how shall his proper share be ascertained? And whether he is to have the whole, or only a part, of the profits, how shall the executor be prevented from receiving some share of the benefit which may be thus appropriated to his partner, and for the realization of which the partner must be in some measure indebted to the agency of the executor and his relation to the estate?
The rule which appropriates to the estate, any profit •gained in compounding or purchasing in debts by the executor, would, in our opinion, lose much of its efficiency, and prove little advantageous to the parties for whose benefit it is intended to operate, if it does not embrace all contracts of that character, made by an executor, whether in his own name or in that of another person. The principle of the rule is, that the executor shall be under no temptation to misuse his power over the estate, his knowledge of its condition, and the confidence to which his station entitles him, to the injury of any party interested in the estate. And if he may use these advantages of his position for the benefit of a son, a brother, or an employer, it is in vain to prohibit him from using them for his own individual advantage. The temptation may be smaller in amount, and perhaps more remote in degree, in one case than in the other; but the distinction seems too faint to authorize the application of a different principle — and especially as it might result in the practical effect of allowing the executor to do, indirectly and in the name of another, what he is prohibited from doing directly and in his own name.
In the case of a joint purchase, like the present, these considerations seem to apply with their full force. For although the exact agency or motive of each party, in making the purchase, may not be shown by evidence, and it might be impossible, in most cases, to make it so appear: yet the union of the administrator in the contract, is of itself sufficient to authorize the presumption that he was the principal agent in negociating it; and that if the purchase was not made for purposes consistent with his character and duty, his name and age'ncy were employed on account of the advantages whici would result *267 from his relation to the estate, either in negociating the terms of the purchase, or in afterwards securing the payment of the debt. And while it is apparent, that in such a transaction, the agency of the executor or administrator is made to subserve other interests than those to which the law appropriates it, and that to sanction it would be opening the door of temptation, which the law intends to close against him, it would seem to be but just, as well as necessary to the' maintenance of the rule to which we have adverted, that he who seeks to gain an advantage by using the name, and, it may be said, under color of the office of, an executor, should be held to have subjected himself to the same restrictions as bind the executor himself.
A suit is institured against ad’rs, heirs Sf trustees; one of the ad’rsr in conjunction withanotherperson, buys up the debt. As assignee, he thus acquires the management of the-suit; and yet is appointed guardian ad litem for the heirs, Sf conducts the defence also; Sf such proceedings are had as are most convenient to himself. Under such-circumstances, it must be presumed, that the purchase of the debt was for the benefit of the estate; else the proceedings would be deemed fraudulent as to the infants Sfc. The purchasers can make no profit on their purchase: it enures to the benefit of the creditors and heirs. But — ■
If this general conclusion, as applied to the mere naked case of a joint.purchase by the executor and another, were not as satisfactorily sustained, as we think it is, by the considerations which have been advanced, yet there are circumstances belonging to this case, which ought, in our opinion, to preclude John Mitchum from deriving any other advantage, or occupying any other position, by reason of the purchase of the Harvie debt, than such as would have belonged appropriately to Dudley Mitch-um, the administrator, if he alone had made the purchase. These circumstances are to be found in the history of the suit and decree under which the land was sold for the Harvie debt, and in the inferences which those- proceedings authorize. The proceedings in that suit, which» on account of their bearing upon the important question now under discussion, have already been minutely detailed, exhibit a singular instance of the same individual representing every interest concerned on both sides of the cause; being a defendant as administrator of the debtor estate, being special guardian for the infant heirs, whose land was bound for the debt, and being, in conjunction with John Mitchum, whom he represented in that suit, the real complainant and creditor. We need not recapitulate the circumstances which attest the advantages that accrued to the purchasers of the Harvie debt from the act that one of them had the complete control of the proceedings.
*268 On the supposition that it was understood, that there Was nothing inconsistent in the various parts acted by -^dley Mitchum in the suit, and that he was doing the best for the infants and the estate, the glaring irre^ular¡¿y 0f allowing a complainant in interest to be the guardian ad litem for infant defendants having a deep stake-in the suit, might be accounted for. And we are bound to assume, that it would not have been allowed by the Chancellor, except under a confident belief, that the interest acquired by the purchase from Harvie, was not to be asserted in any manner inconsistent with the duties- and obligations of the administrator and guardian by whom that interest was represented. If the actual professions of the Mitchuras, or their near relationship to these infant defendants, did not authorize this confidence, it was justified by the attitude assumed by Dudley Mitch-um, who, in this matter at least, acted also for John;-— and if their actual intentions and interests were other than their position on the record proclaimed them to bey they were committing a fraud both upon the Court, and upon the infants, the protection of whose interests one of them had assumed. This fraud they cannot be permitted to impute to themselves for their own advantage. Having reaped the full benefit of the friendly position-assumed on the record, neither of them has a right to claim other inconsistent benefits, on the ground that the first position was a fraudulent one. They will be held to all the consequences of the character and attitude which they have assumed upon the record.
It is apparent from the proceedings to which we have referred, that with the exception of comparatively small advances made by Dudley and John Mitchum, and which-were speedily reimbursed by the sale of the land, they were enabled to meet their engagements to Harvie, by means of the property of the infants, which, by the active agency of Dudley Mitchum, in his character ofNadministrator and guardian for the infant heirs, was subjected to sale, under an erroneous decree, with unusual expedition, at a time, and upon terms exactly suited to their convenience. And this is one of the circumstances, peculiar to this case, which demonstrates the justice *269 and propriety of allowing to the heirs the benefit of the discount obtained in the purchase.
If, in such case,, land is subjected, to sale to satisfy the debt, and is-purchased by the purchasers of the debt — (who had: a right to subject it to sale for their indemnity) and no unfairness appears in the sale,, they can be held accountable only for the amount of their purchase, with interest,not for the increased value of the land at a subsequent period.
Under all these considerations, we-are of opinion that Dudley and John Mitchum were entitled to demand no more from the estate, on account of the Harvie debt, than it cost them, with interest upon their advances until repaid.
The consequences which must follow' from the establishment of this position, have already been stated in general terms; but some of them require further remark and explanation. The complainants claim the difference between the sum paid for the Harvie debt, and the present value of the land. But to this they are not entitled. Dudley and John Mitchum had a right to subject the land to sale for their indemnity; and although the proceedings and decree by which this was effected, were irregular and erroneous, they were sufficient to authorize the sale, which appears to have been a fair one. The Mitchums had a right to purchase the land, at its value, at the time; and they cannot object to their own bid being taken as evidence of that value. From all that appears, they may have made that much out of the land; and the complainants have not proved that it was worth more. The only real injuries which the complainants have suffered from these parties consist in their failure to account to them for the price at which they purchased the land, and their assertion of a claim to which they were not entitled, for a balance of the Harvie debt. The Mitchums should have accounted for the price at which they purchased the land, in the same manner as if it had been purchased by a stranger, for the same sum, and they had received the several payments, as they became due. They are entitled to a credit for the costs of the sale, and of the chancery suit of Harvie, and for their several payments to Harvie, according to the terms set out in the answer of Dudley Mitchum, and should be charged with the sum bid by them for the land, according to the terms of the decree. Upon stating the account in this way, and allowing interest on either side, as the payments due on account of their purchase of the land exceeded, or fell short of, those due at the same time to Harvie, it *270 will be found that, at the close of the transaction on the first day of June, 1828, there remained in their hands a part of the last instalment, then due for the land, amounting to several hundred dollars. For this balance, whatever it may be, with interest .upon it, at the rate of six per cent, per annum, from the first of June, 1828, the complainants are entitled to a decree against John Mitchum, and the executors of Dudley Mitchum. The costs of the chancery suit are not stated in this record, and therefore we cannot exactly ascertain the amount for which this part of the decree should be rendered.
Conclusion that the debts of C. #• others, for their purchases at the sale, were payable inCom’th’s notes — and recital ofcircumstances from which that conclusion is drawn.
Adm’rs held accountable to h’rs for the value of Com’th’s money due the estate, with interest on that value, from the time when it became due and was realized by the adm’rs, in the way of set-off.
*270 The sum of fifteen hundred and sixteen dollars, ninety six cents, due from the defendants, Carter and John Mitchum, on account of purchases at the sale of the personal estate of James Mitchum, should, as we are inclined to think, be considered as payable in Commonwealth’s Bank notes. There seems to have been some uncertainty with regard to the medium of payment at the time of the sale; and there is, consequently, some contradiction on the subject among the witnesses. But it appears, that the property sold at paper prices, and greatly beyond its specie value, and that although the notes were to be taken for dollars, some of the creditors •present, agreed to take Bank paper for their debts, if paid during the sale. Whereupon it was proclaimed, that Commonwealth’s Bank paper would be taken for any payments made during the continuance of the sale. It is proved, that several of the notes which were assigned by the administrators to creditors of the estate, were coerced in specie; and it seems to have been their object to make the proceeds of the sale pay the debts of the estate at par, whether due in specie or paper. It is also proved that the administrators said, during the sale-, that they wrould receive Commonwealth’s Bank paper for such notes as should remain in their hands to be collected; and they did settle the sum now in question as a paper debt. It is proved that the notes of the Bank of the Commonwealth were worth but half their nominal amount in specie.
Under these circumstances, it is probable that injustice might be done if the full amount wére now decreed *271 lo be paid in specie, with interest. But the complainants ought to have the specie value of the fifteen hundred and sixteen dollars, ninety six cents, Commonwealth’s Bank notes, on the 10th day of December, 1824, when it was due, with interest thereon from that day; and they are entitled to a decree accordingly, against Goodloe Carter and the executors of Dudley Mitchum — the said Carter and Mitchum having been the acting administrators, who gave up or discounted these debts for the alleged balance of the Harvie debt.
The decree, except so far as it dismisses the bill against John Brand and Polly Mitchum, is reversed, and the cause remanded, with directions to enter up a decree against the other defendants, in the manner, and for the sums to be ascertained upon the principles above stated.