HORACE H. HARRISON, Trustee, etc., *vs.* C. K. WINSTON and others.

October Term, 1875.

TAX TITLE ACQUIRED BY ONE BENEFICIARY ENURES TO BENEFIT OF ALL.—A beneficiary under a trust assignment for creditors, who is a party to a suit for the execution of the trust, consenting thereto and accepting its benefits, cannot acquire a title to any of the property under a tax sale free from the trust, and a person who joins with him in the purchase with knowledge of his fiduciary relations will stand in no better position.

*Harry Harrison*, for creditors.
*M. M. Brien*, for Woodward.

THE CHANCELLOR:—On the 24th of May, 1865, C. K. Winston made a deed of assignment of certain valuable lands to H. H. Harrison in trust for the benefit of creditors. On the 15th of June, 1865, Harrison, as trustee, filed his bill in this court against Winston and the creditors secured in the deed, for a construction of the deed, and the execution of the trust under the orders of this court. Such proceedings were had in the cause that a large part of the land was sold, and, among other parcels, one lot was sold to said Harrison, and another to John D. Winston, but these purchasers failed to comply with the terms of sale. At the last term of this court these lots, and several other lots remaining undisposed of, were ordered to be sold.

John D. Winston was one of the beneficiaries in the deed of trust. He died, and Harry Harrison is now the administrator *de bonis non* of his estate. On the 23d of July, 1875, after the order of sale as aforesaid, Harry Harrison, administrator, etc., for himself and other creditors secured by the trust deed, filed his petition to remove a cloud from the title of the lots ordered to be sold, growing out of the sale thereof for taxes pending the litigation. The purchasers. at the tax sales are Wilie Woodward, who is a beneficiary under C. K. Winston's deed of trust and a party defendant to this suit, and M. M. Brien, sr., who is the solicitor of said Woodward in this suit. The purchases were made by Brien and Woodward jointly, as partners. They brought actions of ejectment at law upon their tax titles, and judgment was rendered in their favor in one or more of the cases, and they claim to have obtained possession thereunder. They say, in their answer to the petition, that they " are willing for the causes in the circuit court to be transferred to this court and be here determined, but do not waive their possession under said writ of possession before any injunction."

The jurisdiction of the court being thus conceded, and any objection to the form of proceeding adopted being waived, the questions between the parties may be disposed of on their merits.

In the argument made on behalf of the petitioner it was conceded, for the purposes of this case, that the tax sales were in all respects valid, the legal proceedings to recover possession under the title thus acquired free from error, and the possession obtained regular, if possession were in fact had, which was contested as a matter of fact. The position assumed was that, with the concessions granted as above, the defendants Brien and Woodward would hold the title and possession thus acquired, under the circumstances, in trust for the petitioner and the other *cestuis que trust* under C. K. Winston's deed of assignment. This position is sought to be rested upon the ground that Woodward, by

35

reason of his being a co-beneficiary under said deed, and Brien, by reason of being his solicitor as such, occupied such a fiduciary relation to the property and the other beneficiaries that they could not acquire an independent title by tax sale, and that whatever title they did acquire would be for the common benefit of all persons interested under the trust. The position thus taken renders it unnecessary to determine the validity of the tax sales.

In the answer filed, Woodward admits he was one of the creditors secured by the deed of C. K. Winston, and filed an answer to the bill of Harrison, trustee; and Brien admits that he was Woodward's solicitor in that suit. In his answer to Harrison's bill, Woodward states: "He claims the benefit of whatever right or lien was created in his favor by said deed of trust. He is willing that a decree be rendered for the sale of said lands, and for the proceeds to be paid to the creditors of C. K. Winston, in the order of priority in which they stand in reference to said lands, and he submits to such sale, reserving all his legal and equitable rights." This is a plain and unequivocal acceptance of the benefits of the deed, and of the suit, and binds the defendant Woodward to whatever consequences follow the relation to the property and the co-beneficiaries thus produced. The simple question then is, so far as he is concerned, whether one *cestui que trust*, who is a party to a suit for the execution of the trust, and consents to its execution, can acquire a title to the property under a tax sale free from the trust.

The very statement of the question almost demonstrates that there can be but one answer. Lord Hardwicke said, long ago, in the great case of *The Earl of Chesterfield* v. *Janssen*, 1 Ves. 125, 156: "Particular persons in contracts shall not only transact *bona fide* between themselves, but shall not transact *mala fide* in respect of other persons, who stand in such a relation to either as to be affected by the contract or the consequences of it." Accordingly, it has become, under the intimations of that case, one of the best established principles of equity, that a creditor cannot accept a benefit

under· a composition deed, and at the same time retain or
stipulate for a separate advantage, and, no matter how free
his conduct may be from fraud, must either hold himself
entirely aloof from the other creditors, or distinctly com-
municate with them on the subject, if he at all acts in
common with them. *Collingworth* v. *Loyd*, 2 Beav. 385.
In *Van Horne* v. *Fonda*, 5 Johns. Ch. 406, Chancellor Kent,
in discussing the rights of two devisees in possession under
an imperfect title, where one of them purchased an out-
standing title, says : "It is not consistent with good faith,
nor with the duty which the connection of the parties, as
claimants of a common subject created, that one of them
should be able, without the consent of the other, to buy in
an outstanding title, and appropriate the whole subject to
himself, and thus undermine and oust his companion. It
would be repugnant to a sense of refined and accurate jus-
tice. It would be immoral, because it would be against the
reciprocal obligation to do nothing to the prejudice of each
other's equal claim, which the relationship of the parties, as
joint devisees, created. Community of interest produces
community of duty. It cannot be tolerated (that one
should buy up an outstanding encumbrance or adverse title),
when applied to a common subject, in which the parties had
equal concern, and which created a mutual obligation to deal
candidly and benevolently with each other, and to cause no
harm to their joint interests." In *Rothwell* v. *Dewees*, 2
Black, 619, the Supreme Court of the United States were
of opinion that the rule thus enunciated by Chancellor Kent
was not limited to the particular points of that case, but
was "based upon a community of interest in a common
title, which created such a relation of trust and confidence
between the parties that it would be inequitable to permit
one of them to do anything to the prejudice of the other,
in reference to the property so situated." The rule has
been applied in this state to the relation of tenants in com-
mon of lands by descent ( *Tisdale* v. *Tisdale*, 2 Sneed, 596) ;
to the purchase by the *cestui que trust* of the trust property

(*Lyon* v. *Jones*, 6 Humph. 533) ; and to the case of co-beneficiaries under a trust deed, which last is precisely the relation of the parties before us. *Williams* v. *Gideon*, 7 Heisk. 617.

The same rule has been repeatedly applied in the very matter of tax titles in similar or analogous cases. It has been held that a mortgagee cannot acquire any title at a tax sale, whereby the mortgagor may become barred of his equity of redemption, whether he is in or out of possession. *Williams* v. *Townsend*, 31 N. Y. 411; *Sturdevant* v. *Mather*, 20 Wis. 576; *Brown* v. *Simmons*, 44 N. H. 475. Nor can a purchaser at a foreclosure sale under a first mortgage, the second mortgagee not having been made a party to the proceedings, cut off the right of such second mortgagee to redeem by purchasing a tax title. *Anson* v. *Anson*, 20 Iowa, 55. Nor can the grantor of a deed of trust, nor a *cestui que trust*, acquire a title adverse to the trust by the purchase of a tax title. *Phillips* v. *Zerbe Run Imp. Co.*, 25 Penn. St. 56.

It is clear, therefore, upon principle and authority, that the defendant Woodward could acquire no adverse title by virtue of his purchases at the tax sales, but that whatever title he might thus acquire would enure to the benefit of his co-beneficiaries under the trust deed. These beneficiaries, would, of course, be liable to contribute to the common burden of the taxes thus paid, and Woodward would have a lien on the property for his indemnity to this extent. The actions of ejectment were, however, a violation of good faith on his part, and the expenses thus incurred must be borne exclusively by him.

As to the defendant Brien, the general rule is that, where a person occupying a fiduciary relation joins with others in a purchase, the sale may be avoided. *Mitchum* v. *Mitchum*, 3 Dana, 260; *Paul* v. *Squibb*, 12 Penn. St. 296. The trust which attaches to the title acquired by Woodward would, in this view, attach to the title of both Brien and Woodward. But the relation of Brien as solicitor in the

cases fixes him with knowledge of the trust, and enables the beneficiaries to follow the property into his hands. Moreover, any title he might acquire would enure to the benefit of his client, Woodward, as I held at a former term, in the case of *Brien* v. *Marsh*, 1 Tenn. Ch. 625.

The petitioners are entitled to a decree perpetually enjoining the suits at law, and declaring that any title acquired by the defendants at the tax sale shall enure to the benefit of the trust, subject to a lien in favor of the defendants for the taxes paid, with interest, and it will be referred to the master to ascertain the amount. The property will be sold under the decree heretofore made, and the debt due to the defendants for these taxes paid out of the first proceeds of sale. The defendants will pay the costs of the petition and the proceedings under it, and of the suits at law. If the defendants have collected, or shall receive, any rents of the land under their tax purchases, they will be held liable for the same, and the reference, if desired, may include this matter.